M. & B. MULLEN & Co. *v.* T. B. SCOTT et al.

9  173
112  309

A sheriff sold property under a *fi. fa.*; H. purchased it, and, alleging that he was owner of the judgment, the sheriff credited the writ with the amount of it, and made him a deed. The assignment of the judgment had not been made of record, and no order of subrogation had been entered, and eventually it was adjudged to be invalid. Plaintiffs' attorney, before the sale, warned the sheriff if H. should bid off the property, not to enter a credit on the writ, but to exact the money. *Held:* That the conduct of the Sheriff in the premises, was a breach of his official duty, for which both himself and sureties were liable.

MULLEN
*v.*
SCOTT.

A Sheriff, who illegally credits the writ with the amount bid, when in fact no money was paid to him; is liable to the plaintiff in execution; but where there is a special mortgage on the property, outstanding at the time, he will only be liable for the amount bid, less the amount of the special mortgage.

A judgment against a Sheriff is not *res judicata* against his sureties, nor does it conclude them as to the amount of the Sheriff's liability for which they are to respond.

Judicial pursuit of the principal, interrupts prescription as to the sureties. C. C. 3518.

APPEAL from the District Court of the Parish of Madison, *Perkins*, J. *J. J. Amonet*, for plaintiffs. *Stacy & Sparrow*, and *A. Snyder*, for defendants and appellants.

SLIDELL, C. J. A judgment having been obtained in December, 1846, in the name of *M. & B. Mullen & Co.* against *Amos & Roe*, a writ of *fieri facias* was issued by their attorney on the 29th of December, 1846. In March, 1847, a seizure was made by the Sheriff of Madison parish, of certain lands, slaves, horses, cattle, corn, and farming utensils, which, in May following, were struck off in block to *Hynes*, for a sum of $3830, as appears by the Sheriff's return, which concludes with the following statement: "The said *Hynes* has authorized me to credit this writ the same." A Sheriff's deed for the property was executed in favor of *Hynes*, which recites, that it had been struck off to him for a price of $3,830 33, and that he had "complied with the terms and conditions of said sale, by having said amount endorsed on said execution."

In October, 1848, a rule was taken by the plaintiffs on the Sheriff, to show cause why he should not be adjudged to pay the plaintiffs the amount of *Hynes*' bid. The Sheriff dying, the rule was prosecuted against his administrator, and resulted in November, 1850, in a judgment against the Sheriff's succession for the amount claimed. After *fieri facias* and return of *nulla bona*, the present suit was brought for the same amount against *Scott* and others, the sureties of the Sheriff on his official bond, and from a judgment against them for $3,339 05 and interest, and the sureties have appealed.

It appears that at the date of this Sheriff's sale, *Hynes* held a notarial assignment of the judgment from one *Devereaux*, who had purchased the claim against *Amos & Roe*, with other assets, at an auction sale made under the direction of *B. Mullen*, syndic of *Kirvan*, one of the partners of *M. & B. Mullen & Co.*, who had made an insolvent surrender in the District Court at New Orleans. Whether this assignment was exhibited by *Hynes* to the Sheriff does not appear, but if we assume that it was, we do not think it authorized the Sheriff to treat *Hynes* as the owner of the judgment, when warned by the plaintiffs' attorney before the sale, if *Hynes* should bid off the property, not to enter any credit on the writ, but to exact the money. The assignment had not been made of record in the cause, and no order of subrogation had been entered. Under such circumstances, the Sheriff acted at his own peril in entering a credit on the writ by order of *Hynes*, and giving him a deed for the property seized and sold, and delivering him possession. This was clearly a breach of his official duty, committed in the exercise of an official function, under a writ taken out by the plaintiffs; he is officially answerable, and consequently his sureties. The Sheriff could have protected himself by invoking the decision of the court upon the conflicting pretensions of the plaintiffs and *Hynes*, but he chose to decide for himself, notwithstanding the warning given; and the subsequent litigation between them, established the invalidity of *Hynes*' title. See Annual, p. —.

It is said, however, the District Judge erred in considering the Sheriff responsible for the whole amount of the sale, because, at the time of the adjudication, there was a recorded special mortgage on the land for its price, due by *Roe*, the defendant in execution, to his vendor.

In this view we concur. Where there is a special mortgage outstanding on property sold by the Sheriff, the purchaser has a right to retain its amount in his hands, paying only the residue of the price to the Sheriff; and if the plaintiffs repudiate the credit endorsed by *Hynes'* order, they can only hold the Sheriff for the non-performance of what would have been his legal duty, if he had dealt with *Hynes* as a mere stranger to the judgment, instead of improperly treating him as its owner.

The fact, that *Hynes* was secretly buying for the joint account of *Roe* and himself, does not affect the question ; for it is not shown the Sheriff was cognizant of that fact, when he made the sale.

The counsel for the defendants have alluded to an acknowledgment made by the plaintiffs' attorney in his testimony in this cause, that he told *Hynes*, "if he would settle his counsel fees, he would not trouble himself further about the matter," meaning the invalidity of *Hynes'* purchase from *Devereaux*, which was eventually adjudicated upon two grounds, its being the purchase by an attorney of a litigious right, and being obtained by misrepresentation to the vendor as to the value of the judgment. However improper such conduct with regard to the client, it cannot be invoked to defeat the client's right. It is proper to add, that the assertion of this witness, respecting the warning to the Sheriff, is corroborated by the testimony of the Sheriff's deputy, that no objection was made to his testimony on the score of interest, and that the District Judge has given him credence.

The next question is, whether the judgment against the Sheriff forms *res judicata* against the sureties, and concludes the defendant as to the amount of the Sheriff's liability, for which they are to respond.

We find this question decided in the negative in two cases, of bonds given with sureties for the performance of official duty. Thus in *Whitehead* v. *Conner*, which was a bond for the faithful discharge of *Conner's* duty as receiver, it was held, that a judgment ascertaining a balance against him as receiver, was not conclusive against the sureties. 3 Ann. 43. So in *Canal Bank* v. *Brown*, it was held, that a judgment against the principal in an action upon an administrator's bond, was not conclusive against the sureties, who were not parties to this suit.

The credit of $500, allowed by the District Judge is not disputed.

The judicial pursuit of the principal, interrupted prescription as to the sureties. C. C. 3518.

It is therefore decreed, that the judgment of the District Court be reversed ; and it is further decreed, that the plaintiffs recover from the defendants *in solido*, to wit, *Mary Jane Scott*, administratrix of the succession of *Thomas B. Scott*, *Robert M. Scott*, *Gipson C. Bettes* and *Alonzo Snyder*, the sum of $2039 78, with interest thereon, at the rate of five per centum per annum from the 14th day of November, 1850, and costs of suit in the court below ; the cost of appeal to be paid by the plaintiffs.